IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:96-CV-27-BO(1)

PERDUE FARMS, INC.,          )
          Plaintiff,          )
                              )
     v.                       )          MEMORANDUM AND
                              )          RECOMMENDATION
NATIONAL LABOR RELATIONS      )
BOARD, and WILLIE L.          )
CLARK, JR., Regional Director )
of the Eleventh Region of the )
National Labor Relations      )
Board,                        )
          Defendants.         )


          Plaintiff filed this action pursuant to the Freedom

of Information Act (FOIA), 5 U.S.C. §§ 552 et seq.  This

matter is before the court on motions for partial summary

judgment from both sides.  The motions have been met with

oppositions from both sides, and the oppositions have been

met with replies from both sides.  Plaintiff's motion also

seeks an order from the court permitting limited discovery.

These matters are now ripe for disposition.

          In the Second Cause of Action, Perdue seeks to

compel Defendants National Labor Relations Board (NLRB) and

Willie L. Clark, Jr., Regional Director of Region 11, to pro-

duce copies of all records related to their investigation of

the allegations of fraud relating to the petition by the

United Food and Commercial Workers Union, Local 204 (UFCW) to

represent workers at Perdue's Lewiston plant filed in the

NLRB's Region 11 office in Winston-Salem on June 2, 1995.[1]
On June 9, Perdue sent a letter requesting that Clark check
the showing of interest "supporting the petitions filed in
each plant." An election was held in Lewiston on June 28 and
the UFCW lost. The UFCW filed objections and a date for the
second election at Lewiston was set for April 4, 1996.

Two weeks prior to the second election, Perdue sent
a letter to Clark, the Federal Bureau of Investigation, and
the United States Department of Labor (DOL), Division of
Racketeering, enclosing affidavits from two former UFCW
organizers (Dockery and Hayes) who alleged that they, along
with other UFCW representatives had forged unsigned authori-
zation cards in connection with the campaign to gain repres-
entation at the Lewiston plant. Clark apparently began an
investigation, requesting Perdue to submit employment records
bearing signatures of employees eligible to vote in the first
Lewiston election. As a result of his investigation, Clark
found some signatures of questionable authenticity, but he
concluded that they were not sufficient in number to affect
the UFCW's showing of interest. Therefore, the second Lewis-
ton election was conducted on April 4 as scheduled. Again,
however, the UFCW was defeated by the Perdue employees. On
April 11, the UFCW filed objections to the conduct of this
election as well.

On April 19, Perdue's counsel telephoned Clark, and

---

[1]The petition is also referred to as Board Case No. 11-RC-6094.

2

in response to counsel's inquiry, was told by Clark that he had been advised that the DOL was conducting a criminal investigation and that the NLRB did not plan any further investigation.

On May 1, Plaintiff filed a FOIA request with the NLRB for (1) "all documents prepared or received by any official or agent of Region 11 of the National Labor Relations Board addressing, detailing, explaining, or referencing an investigation into the showing of interest in support of the representation petitions filed in Case Nos. 11-RC-6090, 11-RC-6092, and 11-RC-6094;" and (2) "all documents prepared and received by any official or agent of the National Labor Relations Board including, but not limited to, Region 11 and District II of the Division of Operations Management, reporting, addressing, detailing, explaining, or referencing the issue of questionable authenticity or forgery of any authorization cards obtained and/or submitted by any official or agent of Local 204 of the United Food and Commercial Workers Union in support of the representation petition filed in Case No. 11-RC-6094, or any representation petition filed by any official or agent of Local 204 from January 1, 1986, to the present."

On May 6, Plaintiff filed a motion with the NLRB requesting dismissal of the union's petition, certification of the election results, or that the NLRB hold the hearing scheduled for May 21 in abeyance pending a complete investi-

3

gation of fraud affecting the petition. On May 15, the NLRB issued an order denying Plaintiff's motion to dismiss. On May 17, Plaintiff filed its complaint with the court. Plaintiff's Motion for a Temporary Restraining Order was granted on May 29 requiring the NLRB to comply with Plaintiff's May 1 FOIA request.

On May 22, NLRB Headquarters Freedom of Information Officer Hornbeck acknowledged receipt of Plaintiff's FOIA request and referred the first part of the request to Region 11. With regard to the request for documents relating to the fraud investigation, the NLRB refused to provide seven documents identified as responsive to the request but determined to be privileged pursuant to FOIA exemptions 5, 6, 7(A), (C), and (D).

In a letter dated June 6 addressed to Plaintiff's counsel, Officer Hornbeck further responded to Plaintiff's FOIA request by (1) providing additional responsive documents, including copies of e-mail messages between NLRB Headquarters and Region 11 staff and certain other documents relating to a different pending federal court case; (2) providing a redacted letter from the General Counsel to United States Representatives Cass Ballenger and Harris Fawell which was originally deemed privileged in its entirety; and (3) refusing to provide other responsive documents related to the Congressmen's inquiry and certain e-mail messages concerning an ongoing law enforcement investigation.

4

On June 11, Clark responded to the first part of Perdue's FOIA request by (1) providing copies of NLRB Forms 4069-Showing of Interest in Case Nos. 11-RC-6090, 11-RC-6092, and 11-RC-6094; (2) letters from the Region 11 office acknowledging receipt of union authorization cards; (3) a letter acknowledging the insufficient number of union authorization cards necessary for a sufficient showing of interest; and (4) a letter asking the UFCW if it has any interest in representing employees in Case No. 11-RC-6092. Clark refused to provide other responsive documents including affidavits, letters, and intra-agency memoranda, pursuant to FOIA Exemptions 5, 6, 7(A), (C), and (D).

Plaintiff filed an administrative appeal of Clark's partial denial of the first part of Perdue's FOIA request contending that the cited FOIA Exemptions did not support the refusal to produce the NLRB affidavits and memoranda.[2] Plaintiff's appeal was denied by letter dated July 25.

On July 23, the court issued its order granting Perdue's motion for a preliminary injunction and denying NLRB's motion to dismiss. On August 2, the NLRB filed its answer.

On September 13, the NLRB submitted to the court a letter from Richard Glaser, the Assistant United States Attorney in charge of the criminal investigation, which indi-

---

[2]Perdue did not seek review of NLRB's claim of exemptions on the second part of its May 1 request, maintaining that this court has jurisdiction over that matter.

5

cated that it was no longer necessary for the NLRB to be silent about its assistance with the criminal investigation. Thus, on October 10, the NLRB's General Counsel provided Plaintiff with additional responsive documents. The General Counsel stated in an accompanying cover letter that the documents were being released at NLRB's discretion despite its belief that the exemptions were applicable. The NLRB also filed a <u>Vaughn</u> Index[3] describing the responsive documents or portions of responsive documents which were withheld.

Thereafter, discussions between the parties led to an agreement that the names, addresses, gender identifications, and other information identifying any employees of Perdue Farms could be redacted from attachments at issue in this case. In accord with this arrangement, the NLRB provided an Amended <u>Vaughn</u> Index as well as some previously undisclosed documents with its partial summary judgment motion. On November 27, Plaintiff filed its opposition to the motion and its response to the Amended <u>Vaughn</u> Index.

On December 12, Defendants filed their reply to Plaintiff's opposition. Attached to the reply were affidavits from Clark from Acting Associate General Counsel Richard A. Siegel, and a second affidavit from Charles C. Masten, DOL Inspector General. In this same filing, Defendants advised

---

[3]<u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973), <u>cert.</u> <u>denied</u>, 415 U.S. 977 (1974).

6

Plaintiff that it was no longer claiming an exemption with regard to Document A14.

In their motion, Defendants state that they have disclosed "substantially all of the material responsive to Perdue's FOIA request." They claim that most of the material withheld is pursuant to the direction from Inspector General Masten in order to protect the criminal investigation's attorney work product, deliberative process, and (or) criminal investigators working on the case. Documents identified as A14, 15, 16, 17, and 18; B1, 3, 4, 5, 8, 9, and 10; and D3 have been withheld. Documents which have been redacted to protect the NLRB's deliberative processes include A1, 2, 5, 10, 11, and 13; and B1, 4, 6, and 9. Document B4 has been redacted to protect NLRB's work product. Withheld in their entirety are the attachments to documents B2 and B7.

Perdue argues in opposition to NLRB's motion for partial summary judgment that (1) Defendants failed to segregate the non-exempt material in those documents to which they claim exemptions; (2) the Vaughn Index is inadequate in that it only provides a description of the information withheld and conclusory assertions that the exemption applies; (3) the specific exemptions claimed by NLRB are inapplicable; (4) Defendants failed to provide affidavits to support the Vaughn Index; and (5) exemptions do not apply to two documents that were withheld entirely: (i) those involving the June 1995 inquiry into the showing of interest at the Robersonville and

7

Lewiston plants are "basically mechanistic"; and (ii) fraud policies are written and well established, thus documents for which exemption is claimed amounts to creation of secret law.

Plaintiff also argues that the documents for which Exemption 7(A) is claimed were compiled after the compilation period; and that the documents for which Defendants claim a 7(C) exemption are relevant in uncovering why NLRB failed to "carry out its statutory obligations and any privacy interests are outweighed by the direct statutory relevance of the requested documents."

The NLRB subsequently filed a reply to which was attached affidavits from Clark, Siegel, and Masten in response to Plaintiff's assertion that the Amended <u>Vaughn</u> Index was inadequate. As noted, Defendants simultaneously released document A14 stating that the exemption claimed was no longer applicable.

In its independent partial summary judgment motion on the FOIA claim and for limited discovery, Plaintiff asserts that (1) NLRB's failure to justify the claimed exemptions warrants a grant of summary judgment in Plaintiff's favor; (2) NLRB's inadequate search for documents warrants granting Plaintiff's request for limited discovery; and (3) NLRB's wrongful withholding of documents warrants an award of reasonable attorney's fees and litigation costs to Plaintiff. This latter claim is premised on Plaintiff's assertion that Defendants exhibited a lack of good faith in response to the

8

requests for documents.

In their opposition to Plaintiff's motion, Defendants argue that Plaintiff's partial summary judgment motion is "entirely unsupported." They also contend that Plaintiff offers no compelling justification for allowing discovery into NLRB's search process because the Vaughn Index and the supplemental affidavits demonstrate that NLRB conducted a reasonable search. In support of the assertion that a reasonable search was conducted, Defendants submitted affidavits from former NLRB Region 11 attorney Michael W. Jeanette, Board Region 11 Office Manager Sharon Burnette, Legal Research Section Head Beryl M. Rothman, and Richard Siegel. Finally, Defendants argue that Plaintiff is not entitled to an award of attorneys fees.

In Plaintiff's reply, Perdue maintains its contention that the NLRB has failed to establish appropriate exemptions and maintains its claim for attorneys fees. As a result of the information contained in the affidavits submitted by Defendants from Jeanette, Burnette, Rothman, and Siegel concerning the nature of the search for responsive documents, however, Perdue has limited the scope of requested discovery to document A14. In particular, Perdue seeks to review the original of the memorandum of the conversation between Clark and George Murphy and to depose the persons who wrote and typed the memorandum.

Summary judgment is appropriate when there exists

9

no genuine issue of material fact and the moving party is
entitled to judgment as a matter of law.  Fed. R. Civ. P.
56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247
(1986).  The party seeking summary judgment bears the burden
of initially coming forward and demonstrating an absence of a
genuine issue of material fact.  Celotex Corp. v. Catrett,
477 U.S. 317 (1986); Ross v. Communications Satellite Corp.,
759 F.2d 355, 364 (4th Cir. 1985).  Once the moving party has
met its burden, the non-moving party must affirmatively
demonstrate that there is a genuine issue of material fact.
Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,
475 U.S. 574, 587 (1986).

        FOIA was conceived in an effort to permit access by
citizens to most forms of government records.  John Doe
Agency v. John Doe Corp., 493 U.S. 146 (1989).  FOIA requires
disclosure of requested material in the possession of a
federal agency unless that material falls within one of the
nine statutory exemptions structured to protect specified
confidentiality and privacy interests.  National Labor Rela-
tions Board v. Robbins Tire And Rubber Co., 437 U.S. 214,
220-21 (1978).  The strong presumption in favor of disclosure
under FOIA places the burden on the agency to justify with-
holding of any requested documents, Environmental Protection
Agency v. Mink, 410 U.S. 73, 79 (1973); and the burden re-
mains with the agency when it seeks to justify redaction of
identifying information in a particular document as well as

when it seeks to withhold an entire document.  United States Dept. of State v. Ray, 502 U.S. 164 (1991).  FOIA exemptions are set forth in 5 U.S.C. § 552(b)(1) through (9).  The exemptions employed by the NLRB for withholding from disclosure the documents which remain at issue in this case are 5, and 7(A) and 7(C), 5 U.S.C. § 552(b)(5), (7)(A), and 7(C).  The remainder of this writing will focus on the applicability of these exemptions to the documents at issue.

## Exemption (b)(5)-The Deliberative Process or Attorney Work Product

Exemption 5 permits an agency to withhold inter-agency and intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.  5 U.S.C. § 552(b)(5).  To qualify for Exemption 5, the material must satisfy a two-pronged test:  (1) it must be "pre-decisional," or created prior to the adoption of agency policy; and (2) it must be "deliberative," or actually related to the process by which the policy was developed.  Jordan v. United States Dept. of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978).  Exemption 5 is intended to preserve the process of agency decision-making from the natural muting of free and frank discussion which would occur if every opinion or recommendation were made known to the public.  See Mink, 410 U.S. at 87.

An intra-agency document has been defined as one which circulates within one agency or is placed into an

11

agency file, and does not circulate outside the agency. _Conoco, Inc. v. United States Dept. of Justice_, 521 F. Supp. 1301 (D. Del. 1981), _aff'd_ _in_ _part_, 687 F.2d 724 (3rd Cir. 1982). Inter-agency documents are those shared among two or more federal agencies and which satisfy the other criteria of this exemption. See _Mink_, 410 U.S. at 87.

The terms "memoranda and letters" have to be broadly defined to include "recommendations, draft documents, proposals, suggestions and other subjective documents" which represent only a personal opinion, one of numerous inputs in the evolution of an agency's final position. _Coastal States Gas Corp. v. Dept. of Energy_, 617 F.2d 854, 866 (D.C. Cir. 1980). Personal notes of decision-making officials may be covered as memoranda, but such notes may be exempt nonetheless as the deliberating official's private views on a public matter. _Sterling Drug, Inc. v. Federal Trade Commission_, 450 F.2d 698, 708 (D.C. Cir. 1971).

The documents for which Defendants assert the deliberative process privilege, in whole or in part, are A1, A2, A5, A10, A11, A13, B1, B2, B3, B4, B5, B6, B7-Attachment, B9, and B10.

Defendants contend that these documents were pre-decisional in that they were pre-decisional products of the NLRB's representation case or pre-decisional products of the criminal case and are, therefore, protected from disclosure under Exemption 5.

12

Document A1 is one page of handwritten notes to the file from an unidentified NLRB agent containing entries from June 8, found in the case file of No. 11-RC-6090. Defendants state that the document was disclosed except for a specific direction by Curtis A. Wells, Assistant to the Regional Director, to the NLRB agent of how the agent should proceed with the investigation, including identifying the witnesses the agent planned to contact, and a discussion as to whether the use of interpreters was appropriate.

Plaintiff states that the handwritten notes are not addressed to anyone and that they were not relied upon to formulate any particular decision or policy. Plaintiff further claims that the notes were not pre-decisional.

Contrary to Plaintiff's assertion that the notes were not addressed to anyone, Defendants state that the redacted sentences were a specific direction by Wells to an unidentified Board agent. As noted by Clark in his affidavit, these notes reflect communications between the agent and his supervisor concerning case-handling issues and the direction the investigation should take.

Furthermore, Plaintiff's assertion that document A1 is not deliberative because Defendants have failed to file affidavits stating that it was relied upon in formulating any decision is without merit. To satisfy the criteria of the exemption for inter-agency or intra-agency memoranda or letters, the government need not identify a specific decision in

13

connection with which the memorandum was prepared. <u>City of Virginia Beach v. United States Dept. of Commerce</u>, 995 F.2d 1247 (4th Cir. 1993). In other words, although some pro-cesses may not ripen into agency decisions, this does not preclude application of the deliberative process privilege. <u>Access Reports v. Dept. of Justice</u>, 926 F.2d 1192, 1196 (D.C. Cir. 1991). The exemption does not turn on the ability of the agency to identify a specific decision in connection with which a document was prepared. <u>Id</u>. Thus, the explanation given for withholding the A1 notes demonstrates that they fall within the deliberative process privilege.

Similarly, document A2 is a redacted sentence pertaining to the progress of the NLRB agent's investigation and his discussions with his superiors. For the reasons just cited, the withholding of this document is properly justi-fied.

Document A5, for which Defendants claim an exemp-tion under the deliberative process, is a one-page payroll list from Case No. 11-RC-6090 (LIUNA) entitled "Alpha List, Robersonville," with handwritten notes in the margin from an unidentified NLRB agent. Defendants state that the document was disclosed except for the handwritten notes discussing the agent's analysis of the showing of interest investigation and his preliminary recommendations, including his numerical calculations.

Plaintiff avers that there is no basis for with-

14

Case 2:96-cv-00027-BO   Document 55   Filed 08/05/97   Page 14 of 34

connection with which the memorandum was prepared. <u>City of Virginia Beach v. United States Dept. of Commerce</u>, 995 F.2d 1247 (4th Cir. 1993). In other words, although some pro-cesses may not ripen into agency decisions, this does not preclude application of the deliberative process privilege. <u>Access Reports v. Dept. of Justice</u>, 926 F.2d 1192, 1196 (D.C. Cir. 1991). The exemption does not turn on the ability of the agency to identify a specific decision in connection with which a document was prepared. <u>Id</u>. Thus, the explanation given for withholding the A1 notes demonstrates that they fall within the deliberative process privilege.

Similarly, document A2 is a redacted sentence pertaining to the progress of the NLRB agent's investigation and his discussions with his superiors. For the reasons just cited, the withholding of this document is properly justi-fied.

Document A5, for which Defendants claim an exemp-tion under the deliberative process, is a one-page payroll list from Case No. 11-RC-6090 (LIUNA) entitled "Alpha List, Robersonville," with handwritten notes in the margin from an unidentified NLRB agent. Defendants state that the document was disclosed except for the handwritten notes discussing the agent's analysis of the showing of interest investigation and his preliminary recommendations, including his numerical calculations.

Plaintiff avers that there is no basis for with-

14

holding the document because (1) the document is not a memorandum from one NLRB agent to another; (2) there is no affidavit stating that this document was relied upon in formulating a specific decision or policy; and (3) it was generated as part of the "mechanistic check" on the showing of interest.

As noted, to satisfy the FOIA exemption criteria, the government need not identify a specific decision in connection with which a memorandum was prepared. City of Virginia Beach, 995 F.2d at 1253. Thus, despite Plaintiff's claims, Clark's description of this document in his affidavit, together with that set forth in the Amended Vaughn Index, are sufficient to justify withholding it.

Document A10 is described as one page of handwritten notes to the file from an unidentified NLRB agent found in case file No. 11-RC-6090 (LIUNA) regarding contacts the agent made with the parties and alleged witnesses on June 6. According to Defendants, the notes have been disclosed except for the agent's preliminary analysis pertaining to the showing of interest, and unresponsive portions of the document. They further state that the redacted portion of the document includes the procedure used by the agent in making preliminary numerical calculations of whether the union's authorization cards satisfied the showing of interest in that case, the agent's recommendations, and that it was created prior to a final decision on the showing of interest issue.

Plaintiff argues (1) that the document is not a memorandum from one NLRB agent to another; (2) that there is no affidavit stating that the document was relied upon by any NLRB agent in formulating any decision or policy of the agency; and (3) that the document was generated as part of the mechanistic showing of interest. For the reasons noted with regard to documents A1, A2, and A5, Plaintiff's claims concerning the withholding of document A10 is without merit as Defendants have provided adequate justification for the same.

Plaintiff makes a similar objection to the withholding of document A11. This document is also one page of handwritten notes to the file from an unidentified agent on June 2 and June 5, 1995. The redacted portion of the document includes a preliminary analysis of the showing of interest in Case No. 11-RC-6090 (LIUNA) and the steps taken to make the analysis. Plaintiff repeats the arguments against withholding which were made with regard to the documents already discussed. In addition, Plaintiff states that the document is nothing more than a summary of telephone conversations the agent had on June 5 with Perdue's counsel and certain officials from the unions. For the reasons cited above, however, the withholding of this document has been sufficiently justified.

The redacted portions of Document A13 which are at issue pertain to recommendations and analysis as well as

16

handwritten notes by Wells to Clark. Plaintiff claims that the recommendation from Wells to Clark lost its exemption because it was adopted by Clark as a final decision. They state that the memorandum was generated on July 3, 1995, by Wells, and that on July 5 Clark issued a letter to the parties stating that after a complete investigation he had determined that there was a sufficient showing of interest to continue the processing of the Petition in that matter. Plaintiff asserts that the NLRB is "not free to create a body of 'secret law' by hiding memorandums which have been subsequently adopted as the agency's final decision."

Clark counters that Wells coordinated a collateral investigation of the allegations raised by Perdue concerning a showing of interest in Case No. 11-RC-6090. He asserts that the draft document prepared by Wells following his investigation was provided to him with the information he needed to evaluate the evidence upon which he based his final decision as to what action to take. Defendants aver that nowhere in the final document, which was transmitted to Perdue, were the pre-decisional documents formally or informally adopted.

Draft documents are generally exempt from disclosure for two reasons: (1) disclosure may reveal policy deliberations, <u>Brush Wellman, Inc. v. Dept. of Labor</u>, 500 F. Supp. 519 (N.D. Ohio 1980); and (2) disclosure might confuse the reader about the official position of an agency. <u>Russell</u>

v. Dept. of The Air Force, 682 F.2d 1045 (D.C. Cir. 1982).
Defendants specifically state that the redacted portion of
the memorandum from Wells contained his recommendations and
analysis. To find that such documents are open for disclo-
sure could chill the kind of free interchange from a subordi-
nate to a superior which Exemption 5 was created to protect.
See Fine v. United States Dept. of Energy, 823 F. Supp. 888,
903 (D.N.M. 1993).

Furthermore, Perdue has provided nothing to support
its conclusory allegation that the Defendants were creating a
body of "secret law" because a letter from Wells to Clark was
dated only two days prior to Clark's issuance of a final
decision. The term "secret law" has been defined as informa-
tion withheld from the public which defines legal standards
by which the public's conduct is regulated. Audubon Society
v. United States Forest Svc., 104 F.3d 1201 (10th Cir. 1997).
When, as in the case sub judice, governmental misconduct is
alleged as justification for disclosure under FOIA, the
public interest is insubstantial unless the requestor puts
forward compelling evidence that the agency denying the
request is engaged in illegal activity and shows that the
information sought is necessary in order to confirm or refute
that evidence. Quinon v. Federal Bureau of Investigation, 86
F.3d 1222 (D.C. Cir. 1996).

Plaintiff states that the Wells' letter was "appar-
ently" adopted by Clark and speculates that it was indeed the

18

actual decision. Defendants argue in reply that nowhere in the final document which was disclosed to Plaintiff were any pre-decisional documents, such as that at issue here, formally or informally adopted. In this case, Plaintiff has failed to offer any compelling evidence of wrongdoing on the part of the NLRB. Rather, Plaintiff's provide nothing more than a conclusory statement concerning the making of "secret law" by the NLRB.

Document B1 is described as an e-mail from Siegel to Acting Associate General Counsel Fred Feinstein and Acting General Counsel B. Allen Benson. Defendants state that the e-mail was furnished in full with the exception of two redacted sentences which discussed "the Agency's determinations on how to proceed with the election and issues in the cases, and the FBI's progress in its investigation." Defendants claims the sentences are exempt from disclosure under Exemption 5 because, as intra-agency memorandum, "they include an evaluation of the evidence and the procedure the Agency intended to follow in the cases and a report on the status of the FBI investigation."

Plaintiff concedes that the document is an intra-agency letter, but states that it is neither pre-decisional or deliberative. Plaintiff speculates that the redacted sentences are an instruction from John Toner, Executive Secretary of the NLRB, to Clark on how to proceed. They interpret the word "determination[]" to mean that a decision had al-

ready been made and thus amounts to "secret law."

In response, Siegel states that Clark had informed him about the fraud allegations which were raised in the Perdue representation proceeding, and that the e-mail represented a report to his superiors as to the status of the issues prior to their administrative decision on how to proceed. He states that the first redacted sentence reflected the opinions and recommendations among NLRB personnel and includes an evaluation of the evidence and the procedure to be followed in the case. He further states that the second redacted sentence was made as part of his status report to his superiors about the FBI's criminal investigation into the matter at issue to assist them in making their determinations. Siegel's explanation of the reason for withholding this document satisfies the court that it was a part of the deliberative process and fits properly within the scope of Exemption 5.[4] Again, Plaintiff has offered no compelling evidence that the NLRB is creating a body of "secret law."

Defendants also claim that the deliberative process exemption applies to the attachments to document B2. Document B2 is an e-mail from Wells to Siegel to which is attached a three-page draft of a letter from General Counsel Feinstein to United States Representatives Harris Fawell and

---

[4]Defendants also claimed that the information pertaining to the FBI is exempt under Exemption 7(A). Because the court finds that the document is exempt under Exemption 5, the merits of this latter claim of exemption need not be addressed.

Cass Ballenger referring to the ongoing representation pro-
ceedings in 11-RC-6094 and the investigation of the Depart-
ment of Labor into allegations of fraud.  The draft letter
was withheld in its entirety.

Plaintiff argues that because Congress is not an
agency, the letter is not an inter-agency or intra-agency
memorandum.  Plaintiff further avers that it is difficult to
see how a letter to Congress, which is essentially a status
report, would contain any deliberative material.  Plaintiff
questions whether the document in question is indeed an
inter-agency or intra-agency memo because the ultimate ad-
dressee is Congress.

In response to this latter question, however,
Defendants rightly assert that it is irrelevant that the
draft is addressed to the Congressmen.  That the draft letter
was sent with the disclosed e-mail from Wells to Siegel and
Watkins qualifies it as an inter-agency memo.  Clark states
in his affidavit that the draft letter set forth information
and evidence in the Region's possession and suggested to
General Counsel Feinstein a response to Congress.

As noted with regard to document A13, draft docu-
ments, by their nature, are justifiably exempt from disclo-
sure under the deliberative process privilege.  Exemption
(b)(5) is intended to protect all communications, even purely
factual material which would, if revealed, expose to public
view the deliberative process of an agency.  Russell, 682

21

F.2d at 1047; See Mead Data Central, Inc. v. United States
Dept. of The Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977).
In this case, the withholding of the draft letter fulfills
one purpose of Exemption 5, that is, to protect the creative
debate and candid consideration of alternatives within an
agency, and thereby, improve the quality of decision making.
Thus, the document that was ultimately sent to Congress
constituted the official statement from the NLRB as to the
status of the investigation, as opposed to the suggestions
provided by the Assistant to the Regional Director.

Document B3 is described as an e-mail dated April
17, 1996, from Wells to Siegel entitled "Perdue Farms, Inc."
A copy of the e-mail was apparently sent to Clark and Deputy
Assistant General Counsel Ronald J. Watkins. Defendants
state that the e-mail was disclosed in full except for the
redacted name of a special agent from the DOL and the portion
of one sentence reporting the procedures used in the U.S.
Attorney investigation. They claim the redacted material is
exempt from disclosure under Exemption 5 because it includes
the deliberations of the special agent and the U.S. Attorney
as to the steps they planned to take in the investigation of
the alleged criminal activities in the case.

Plaintiff asserts that none of the redacted infor-
mation is deliberative, and that there is no affidavit stat-
ing that the document was relied upon in formulating any
policy decision.

In an affidavit filed subsequent to Plaintiff's response, Inspector General Masten asserts the deliberative process privilege with regard to this document, as one of several others which contain the thought processes and deliberations of Agency personnel in the criminal investigative process. He states that this document is among those which "contain information concerning the direction and course of an investigation." The issue of whether a withheld document was relied on to formulate policy was addressed in the discussion of document A13. Masten's affidavit, in addition to the details provided in the Amended <u>Vaughn</u> Index, are sufficient to support Defendants' claim that document B3 falls within the deliberative process.

Document B4 is described as an e-mail dated April 18, 1996, entitled "Perdue Farms, Inc." with an attached "Forward Header" which, according to Defendants, contains the subject, author, date and time of the e-mail, and the original message of an earlier document described in this case as B3. Two sentences and the "Forward Header" described in B3 were redacted. The first sentence is not at issue because Plaintiff concedes that this sentence concerning other litigation is arguably attorney work product.

Defendants contend that the second redacted sentence, however, discusses the progress of the investigations into allegations raised in case No. 11-RC-6094 and the author's evaluation of that progress. They state that this

23

sentence is exempt under Exemption 5 because it falls within the deliberative process and attorney work-product privileges. Plaintiff avers that Defendants have failed to provide sufficient information to sustain the exemption because they failed to describe the issue being investigated or the decision that was being made that caused this information to be a part of the deliberative process.

In his affidavit, however, Siegel states that the e-mail in question was prepared as part of his responsibility to advise Benson, who was his superior, of the ongoing status of issues relating to the Perdue case in order to assist him in determining whether and in what manner to proceed with the case. He states that in the second redacted sentence which is at issue, he relayed his personal assessment of the merits of the suggestions from an attorney for an employer in another case on how his client wished the NLRB to proceed with the investigations in the other case. Siegel's explanation is adequate to sustain Defendants' claim that this document is exempt as both a part of the deliberative process privilege and the attorney work-product privilege.

Defendants describe document B5 as an e-mail dated April 19, 1996, from Acting Associate General Counsel Benson to Siegel entitled "Re:Perdue Farms, Inc." According to Defendants the e-mail was disclosed in full. Nevertheless, the e-mail contained a "Reply Separator" and a "Forward Header" which were redacted. The "Reply Separator" is the

document described in Document B4, and the "Forward Header"
is the document described in Document B3. Defendants state
that the "Forward Header" and "Reply Separator" were redacted
as set forth in Documents B3 and B4, respectively. For the
reasons already enunciated with regard to Documents B3 and
B4, Defendants will be allowed to withhold those portions of
document B5 for which they claim the deliberative process
privilege.

Document B6 is an e-mail dated April 24, 1996, from
Wells to Siegel entitled "Perdue election results." Accord-
ing to the Vaughn Index, the document was provided to Plain-
tiff, with the exception of two sentences which discuss the
likelihood of objections going to a hearing, the union's
possible strategy, and the author's evaluation of that stra-
tegy.

Plaintiff contends that there is insufficient
information from which to evaluate the claimed exemption.
Plaintiff raises a number of questions concerning the final
decision to which the information at issue was applicable and
whether the decision was made after the hearing. Plaintiff
states that Perdue believes that the first redacted sentence
reveals the Board's predisposition to find merit in the
Union's objections without benefit of a hearing. This is
another of the withheld documents which Plaintiff claims that
are examples of Defendants making "secret law."

As to the second sentence, Plaintiff argues that

25

there is no way that Wells' evaluation of union strategy is deliberative in nature, and that the "strategy" of the Union is not relevant to any decision being made by the NLRB on the Union's objections. Plaintiff again speculates that the sentence will show some bias on the part of the NLRB in attempting to "foster the Union's 'strategy.'"

Defendants counter that the e-mail clearly states that it deals with a preliminary assessment in the representation case and not a final determination which would be disclosed. Despite Plaintiff's speculation concerning the nature of the redacted sentences, the court is of the opinion that the sentences consist of opinions of the author which reflect the deliberative process.

Document B7 is an e-mail dated May 24, 1996, from Wells to Siegel discussing an attached draft order. The draft order was withheld. Plaintiff contends that the document is not pre-decisional because the decision already had been made. Although Defendants' asseverations in the Amended Vaughn Index in support of the application of Exemption 5 to document B7 may have been deficient, Clark's affidavit offers sufficient support to sustain the exemption. Clark states specifically that "this draft order was created subsequent to discussions at the regional level between the NLRB Agent, the Agent's supervisor and [himself]." He further asserts that it was provided to the Division of Operations-Management to advise them of the Region's planned action and to ascertain

26

Headquarters' input prior to the final Order being issued. He states that prior to the final order, various NLRB personnel expressed their opinions and made recommendations as to how to proceed resulting in a final order which differed from the draft order in question. For the reasons stated above with regard to document A13, this draft document is also exempt from disclosure.

Document B9 is an e-mail dated July 9, 1996, from Clark to Siegel entitled "Perdue-Card Fraud." At issue are four redacted sentences for which Defendants claim exemption from disclosure under Exemption 5 stating that they fall within the deliberative process. Defendants state that the sentences include an evaluation of the progress and strategy of the investigations of the DOL, FBI, and the United States Attorney into the alleged criminal allegations in the cases and coordination between the agencies.

Plaintiff argues that the e-mail is "not deliberative in nature," that there is no affidavit stating that it was relied upon in formulating any decision or policy, and that it was sent long after the NLRB closed its investigation.

In response, Defendants submitted an affidavit from Clark in which he avers that the document reflects his explanation to Headquarters of the posture of the criminal investigation, which was apparently ongoing, based on his discussion with the special agent. He further states that this

27

document was part of the "routine consultive process between the regions and Headquarters and provided in light of the allegation of fraud regarding the showing of interest." He states that it kept Headquarters current with events in Region 11 concerning the case, so that Headquarters could in turn assist the region in administering the case in light of the criminal investigation.

Based upon Clark's affidavit, the redacted sentences would be considered a part of the deliberative process. Moreover, in response to Plaintiff's statement that the e-mail was sent long after the NLRB investigation was closed, Clark states that the e-mail concerned the ongoing criminal investigation which was not closed. Finally, Plaintiff's concern that there is no showing that the e-mail was relied upon in formulating any decision or policy is without merit for the reasons cited with regard to documents A1 and A2 above. Therefore, Defendants have provided sufficient information to support their withholding of this document as part of the deliberative process under Exemption 5.

Finally, Defendants assert that document B10 is exempt from disclosure under Exemption 5. This document is an e-mail from Wells to Siegel. The document discusses the steps the DOL and the U.S. Attorney were taking in their investigation and their contacts with the Regional Office. Defendants state that the document was disclosed except that a statement concerning the investigation procedure was redac-

28

ted. They claim that the redacted statement is exempt from disclosure under the deliberative process privilege because the disclosure would reveal the deliberations of the U.S. Attorney and the DOL investigator pertaining to how they planned to proceed with the investigation, and the type of evidence they deemed necessary to the investigation.

Plaintiff merely argues that the exemption does not support the redaction. Plaintiff states that Richard Glaser's letter demonstrates that the U.S. Attorney does not consider the nature of the investigation to be deliberative and that the e-mail reflects facts.

In response, Defendants' claim that this document is deliberative because it makes recommendations or expresses opinions about legal matters. This claim is supported by an affidavit from Inspector General Masten, despite Plaintiff's contrary interpretation of Glaser's letter. For reasons already stated, Defendants properly withheld this document from disclosure.


Exemption 7(A)-Investigatory Material and 7(C)-Disclosure of Names

NLRB contends that a number of the withheld documents are protected from disclosure by exemption 7(A), which permits the withholding of investigatory "records . . . compiled for law enforcement purposes" the production of which would "interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). NLRB correctly points out that

29

Plaintiff misinterprets the finding in <u>John Doe Agency</u> in its assertion that the documents were compiled after May 16, 1996, when the response to the FOIA response was due, and thus do not meet the compilation requirement.  <u>John Doe Agency</u> clearly states that the phrase "compiled for law enforcement purposes" contains no requirement that the compilation be effected at a specific time.  493 U.S. at 476. Among those documents Defendants seek to withhold under this exemption are A15, A16, A17, A18, B1, B3, B5, B8, B9, and B10 and D3.

Defendants claim exemptions for documents A15, 16, B3, B5, B8, B9, and D3 under Exemption 7(C).  Documents which meet the law enforcement threshold and whose release "could reasonably be expected to constitute an unwarranted invasion of personal privacy" may be withheld under Exemption 7(C). This exemption is meant to protect from disclosure names and identifying information about individuals involved in a criminal investigation.  5 U.S.C. § 552(b)(7)(C).  With regard to each document withheld pursuant to this exemption, Plaintiff's essential question is whether the documents were compiled for law enforcement purposes.

As to documents A15, A16, A17, and A18, Plaintiff concedes in the response to the Amended <u>Vaughn</u> Index that these documents "would normally be protected (as redacted) either under the work-product exemption in exemption (b)5 or under the exemptions in 7(A) and 7(C) for material compiled

30

for law enforcement purposes, which either would reasonably be expected to interfere with enforcement proceedings or would constitute an unwarranted invasion of privacy." Plaintiff argues, however, that the September 12, 1996, Glaser letter indicates that no harm would occur from the disclosure of documents previously determined to be exempt. The court's reading of this letter does not render the same interpretation. Rather, it is clear that this letter merely states that the Board no longer needed to be silent about its assistance with the criminal investigation. The plain language of the letter states, in pertinent part:

> As of August 27, 1996, it was decided that the existence of the criminal investigation had become sufficiently public . . . that it was no longer necessary for the Board to be silent about the Board's assistance with the criminal investigation. Of course, let me reconfirm our position in existence since April, 1996 that the continued processing of the Board case does not interfere with the criminal investigation.

Contrary to Plaintiff's assertion, there is no mention in this letter about the disclosure of documents. Nevertheless, Defendants state in their Reply, supported by statements in the Amended <u>Vaughn</u> Index and the Second Declaration of Inspector General Masten, that Masten has directed the NLRB to protect certain records and information in order to avoid interfering with the ongoing criminal investigation. For these reasons, the court concludes that Defendants provided sufficient information to sustain the exemptions 7(A) and

31

7(C) as to the aforementioned documents.

Defendants claim that document B9, in addition to being exempt under Exemption 5 of the deliberative process privilege, is also protected under exemption 7(A) as it relates to an ongoing criminal investigation. With regard to the applicability of Exemption 7(A), Plaintiff's argue that the Glaser letter demonstrates that no harm will occur if document B9 is released.

In his affidavit, Clark states that document B9 reflects his explanation to "Headquarters" of the posture of the criminal investigation based on his discussion with the special agent. He states that "[t]he information was provided as part of a routine consultative process between the regions and Headquarters and in light of the allegations of fraud regarding the show of interest." Based upon this explanation, the court is satisfied that the redacted sentences were properly withheld in view of the ongoing criminal investigation.

The only information redacted from documents B8 and D3 were the names of the special agents. These documents are being withheld pursuant to Exemption 7(C) which permits the withholding of investigatory records when release would "constitute an unwarranted invasion of personal privacy." Plaintiff raises the following grounds for releasing the names of the agents with regard to each document: (1) that the document was not compiled for law enforcement purposes;

and (2) that Glaser's letter demonstrates that no harm will ensue from the disclosure. FOIA exemptions for records or information compiled for law enforcement purposes are not limited to records or information compiled for criminal investigations. Davin v. United States Dept. of Justice, 60 F.3d 1043 (3rd Cir. 1995). In order for exemption under this section, the agency's investigative activities that give rise to the document being sought must be related to the enforcement of federal laws or maintenance of national security; and the nexus between the investigation and one of the agency's law enforcement duties must be based on information sufficient to support at least a colorable claim of its rationality. Id. at 1055.

Defendants' application of Exemption 7(A) is appropriate in that the October 15, 1996, Declaration of Inspector General Masten confirms that these are among the documents which contain material related to an ongoing criminal investigation involving allegations that forged authorization cards were submitted to the Board in cases involving Plaintiff. Thus, disclosure of the names of the agents involved could reasonably be expected to interfere with this ongoing criminal investigation. Moreover, their claim of Exemption 7(C) is appropriate as the disclosure of the names could reasonably be expected to constitute an unwarranted invasion of personal privacy. Therefore, the explanation for the withholding of the names of the agents is sufficiently justi-

Case 2:96-cv-00027-BO   Document 55   Filed 08/05/97   Page 33 of 34

fied.

Similarly the names of special agents were withheld in documents A15, A16, B3, B7, and B9. For the same reasons, the non-disclosure of these names is justified under Exemptions 7(A) and 7(C).

Remaining before the court are questions concerning document A14. Although Defendants claim to have fully disclosed the document as it appears in their files, the document which appears to end in mid-sentence clearly leaves some question as to its full disclosure. For this reason, Defendants' motion for partial summary judgment should be denied in part, and Plaintiff's motion for limited discovery as to this document should be allowed.

Turning to the request for attorneys fees, Plaintiff has failed to show that such a request is warranted.

Accordingly, it is RECOMMENDED that (1) Defendants' Motion for Partial Summary Judgment be GRANTED as to all claims except those involving documents A14; (2) Plaintiff's Motion for partial summary judgment be GRANTED IN PART only as to document A14, and DENIED IN PART as to the remaining claims; Plaintiff's motion for attorneys fees be DENIED; and (3) Plaintiff's Motion for Limited Discovery with regard to document A14 be GRANTED.

August ___5___ 1997.

I certify the foregoing to be a true and correct copy of the original.
David W. Daniel, Clerk
United States District Court
Eastern District of North Carolina

By _____
_____ Clerk

WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

34